1   EMARD DANOFF PORT TAMULSKI & PAETZOLD LLP
    Eric Danoff (60915)
2   49 Stevenson Street, Suite 400
    San Francisco, CA 94105
3   Telephone:     (415) 227-9455
    Facsimile:     (415) 227-4255
4   E-Mail:        edanoff@edptlaw.com

5   Attorneys for Defendants
    GUAM INDUSTRIAL SERVICES, INC.
6   and MATHEWS POTHEN

7
                    UNITED STATES DISTRICT COURT
8                  NORTHERN DISTRICT OF CALIFORNIA
                      SAN FRANCISCO DIVISION
9
    ZURICH AMERICAN INSURANCE          Case No.:  CV 11 1874 MEJ
10  COMPANY, a corporation; STARR
    INDEMNITY & LIABILITY COMPANY,     **NOTICE OF MOTION AND MOTION**
11  a corporation,                     **BY DEFENDANTS GUAM**
                                       **INDUSTRIAL SERVICES AND**
12              Plaintiffs,            **MATHEWS POTHEN TO DISMISS**
                                       **THIS ACTION AS AGAINST THEM**
13         vs.                         **FOR LACK OF PERSONAL**
                                       **JURISDICTION OR TO TRANSFER IT**
14  GUAM INDUSTRIAL SERVICES, INC.,    **TO GUAM; POINTS AND**
    dba GUAM SHIPYARD; MATHEWS         **AUTHORITIES IN SUPPORT OF**
15  POTHEN; THE UNITED STATES OF       **MOTION**
    AMERICA, by and through the Secretary
16  of Transportation for the Maritime   Hearing Date: August 4, 2011
    Administration,                      Hearing Time: 10:00 a.m.
17                                       Judge:  Hon. Maria-Elena James
                Defendants,             Courtroom:  B, 15th Floor
18

19

20        Defendants Guam Industrial Services, Inc. and Mathews Pothen move to dismiss this

21  action as against them for lack of personal jurisdiction, or to transfer this action to the U.S.

22  District Court for the District of Guam.

23

24

25

26

27

28

EMARD DANOFF PORT
TAMULSKI & PAETZOLD LLP
49 Stevenson Street
Suite 400
San Francisco, CA 94105

NOTICE OF MOTION, POINTS AND AUTHORITIES
Case No   CV 11 1874 MEJ

# TABLE OF CONTENTS

NOTICE OF MOTION ........................................................................................ 1

RELIEF SOUGHT BY THIS MOTION ........................................................... 1

MEMORANDUM OF POINTS AND AUTHORITIES .................................... 1

   I.   STATEMENT OF FACTS ............................................................................. 1

      A.  The Floating Drydock MACHINIST ................................................... 1

      B.  Procurement of Insurance for the MACHINIST ................................ 2

      C.  The Sinking of the MACHINIST. ....................................................... 3

      D.  The Refloating of the MACHINIST .................................................... 4

      E.  Guam Shipyard's Damages ................................................................ 5

      F.  The Insurers' Declaratory Relief Action and Denial of Cover ........ 5

      G.  Guam Shipyard's Lawsuit in Guam to Recover under the Policies. ... 7

  II.  PLAINTIFFS' COMPLAINT AS AGAINST GUAM INDUSTRIAL SERVICES AND POTHEN SHOULD BE DISMISSED FOR LACK OF PERSONAL JURISDICTION ............................................................................................. 7

      A.  Specific Personal Jurisdiction Requires Purposeful Availment of the Forum, and the Exercise of Jurisdiction Must Be Reasonable. ........................................... 7

      B.  GIS and Pothen Are Not Subject to Personal Jurisdiction in This Case ............ 9

  III.  THIS CASE SHOULD BE TRANSFERRED TO THE U.S. DISTRICT COURT FOR THE DISTRICT OF GUAM ......................................................................... 11

      A.  Transfer Is Warranted When Private and Public Interest Factors Make the Transferee District More Convenient. ................................................ 11

      B.  The Factors in this Case Call For Transfer to Guam. ....................... 12

          1.   The Convenience of Witnesses. ................................................ 12

               a.  Witnesses with Knowledge of Important Information. ............. 13

               b.  Witnesses with Knowledge of Undisputed or Unimportant Information. ............................................................... 17

               c.  The Surveyors for the Insurers. ................................................. 18

          2.   The Convenience of the Parties. ................................................ 19

          3.   Judicial Economy. ...................................................................... 21

EMARD DANOFF PORT
TAMULSKI & PAETZOLD LLP
49 Stevenson Street
Suite 400
San Francisco, CA 94105

    4. The Relative Ease of Access to Sources of Proof. ............................ 21

    5. Factors Having Little or No Weight in this Case. ............................ 22

  C. Analogous Cases Confirm the Propriety of Transfer ............................................. 22

IV. CONCLUSION ............................................................................................................. 24

EMARD DANOFF PORT
TAMULSKI & PAETZOLD LLP
49 Stevenson Street
Suite 400
San Francisco, CA 94105

NOTICE OF MOTION; POINTS AND AUTHORITIES
Case No.: CV 11 1874 MEJ

# TABLE OF AUTHORITIES

**CASES**

*Ambassador Insurance Company v Truly Nolan of America, Inc.* (SDNY 1981)
514 F.Supp. 985 ................................................................. 10

*Asahi Metal Indus. Co. v Superior Court* (1987) 480 U.S. 102, 107 Sup.Ct. 1026,
94 L.Ed.2d 92.. ................................................................. 8

*Chrysler Capital Corp. v Woehling* (D.Del. 1987) 663 F.Supp. 478 ................. 19

*Continental Grain Co. v The F.B.L.-585* (1960) 364 U.S. 19, 80 S.Ct. 1470,
4 L.Ed.2d 1540 ................................................................. 12

*Data Disc, Inc. v Sys. Tech. Assocs., Inc.* (9th Cir. 1977) 557 F.2d 1280.......... 8

*Dwyer v General Motors Corp.* (SDNY 1994) 853 F.Supp. 690.......................... 20

*FDIC v British-American Ins. Co., Ltd.* (9th Cir. 1987) 828 F.2d 1439 .......... 8, 9, 10

*Fields v Sedgwick Associated Risks, Ltd.* (9th Cir. 1986) 796 F.2d 299 ............ 8

*Fort Knox Music Inc. v Baptiste* (2nd Cir. 2001) 257 F.3d 108 ..................... 24

*Gray & Co. v Firstenberg Machinery Co.* (9th Cir. 1990) 913 F.2d 758.............. 10

*Gulf Oil Corp. v Gilbert* (1947) 330 U.S. 501, 67 Sup.Ct. 839, 91 L.Ed. 1055...... 12

*Helicopteros Nacionales de Colombia v Hall* (1984) 466 U.S. 408, 80 L.Ed.2d 404,
104 S.Ct. 1868 ................................................................. 8

*In re Apple, Inc.* (8th Cir. 2010) 602 F.3d 909 .................................. 19

*In re Genentech, Inc.* (Fed. Cir. 2009) 566 F.3d 1338 ............................ 12

*In re Horseshoe Entertainment* (5th Cir. 2003) 337 F.3d 429 ...................... 22

*International Shoe Co. v Washington* (1945) 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 ... 8

*Koehring Co. v Hyde Constr. Co.* (5th Cir. 1963) 324 F.2d 295 .................... 22

*Kulko v Sup. Ct.* (1978) 436 U.S. 84, 94, 98 S.Ct. 1690, 56 L.Ed.2d 132 .......... 8

*McGlinchy v Shell Chemical Co.* (9th Cir. 1988) 845 F.2d 802 ..................... 8

*One Beacon Insurance Company v JNB Storage Trailer Rental* (E.D. Va. 2004)
312 F. Supp.2d 824 ............................................................. 18, 23

*Posven, C.A. v Liberty Mut. Ins. Co.* (SDNY 2004) 303 F.Supp.2d 391 .............. 21

*Reed v Fina Oil & Chem. Co.* (E.D. Tex. 1998) 995 F.Supp. 705 .................... 12

*Reiffin v Microsoft Corp.* (D.D.C. 2000) 104 F.Supp.2d 48 ........................ 19

EMARD DANOFF PORT
TAMULSKI & PAETZOLD LLP
49 Stevenson Street
Suite 400
San Francisco, CA 94105

NOTICE OF MOTION; POINTS AND AUTHORITIES
Case No  CV 11 1874 MEJ

*Reliance Insurance Co. v Bend'n Stretch, Inc.* (SDNY 1996) 935 F.Supp. 476.......................22

*Royal & Sunalliance Insurance Co. v Resolve Towing & Salvage* (SDNY 2000)
2001 AMC 718...................................................................................................10

*Sandvik, Inc. v The Continental Insurance Co.* (DNJ 1989) 724 F.Supp. 303 ..........................12

*Security Insurance Company v ITA Textiles* (SDNY 2000) 2000 U.S. Dist. LEXIS 15403 ......23

*Sweetheart Plastics, Inc. v Illinois Tool Works, Inc.* (SDNY 1967) 267 F.Supp. 938..............19

*Thos. P. Gonzalez Corp. v Consejo Nacional, etc.* (9th Cir. 1980) 614 F.2d 1247 .....................8

**STATUTES/REGULATIONS**

28 U.S.C. §1404(a).................................................................................... 1, 11, 23, 24

28 U.S.C. §1404(d) .............................................................................................12

Federal Rules of Civil Procedure Rule 12(b)(2)..................................................... 1

California Code of Civil Procedure §410.10...............................................................7

EMARD DANOFF PORT
TAMULSKI & PAETZOLD LLP
49 Stevenson Street
Suite 400
San Francisco, CA 94105

- iv -

NOTICE OF MOTION, POINTS AND AUTHORITIES
Case No   CV 11 1874 MEJ

**NOTICE OF MOTION**

Please take notice that on August 4, 2011, at 10:00 a.m., or as soon thereafter as the matter may be heard, defendants Guam Industrial Services, Inc. ("GIS") and Mathews Pothen ("Pothen") will move to dismiss Plaintiffs' Complaint as against them under Rule 12(b)(2) for lack of personal jurisdiction or, in the alternative, to transfer this action to the U.S. District Court for the District of Guam pursuant to 28 U.S.C. §1404(a). The hearing will take place in the United States District Court for the Northern District of California, San Francisco Division, located at 450 Golden Gate Avenue, San Francisco, CA 94102, before the Honorable Maria-Elena James, United States Magistrate Judge. In support of this Motion GIS and Pothen submit the following Memorandum of Points and Authorities, and the Declarations of Mathews Pothen, David Ledger, and Eric Danoff.

**RELIEF SOUGHT BY THIS MOTION**

Plaintiffs' Complaint seeks declaratory relief that they are not responsible to pay under a certain hull & machinery insurance policy. Defendants GIS and Pothen seek dismissal of the Complaint as against them under F.R.C.P. Rule 12(b)(2) for lack of personal jurisdiction or, in the alternative, transfer of this case under 28 U.S.C. §1404(a) to the U.S. District Court for the District of Guam.

**MEMORANDUM OF POINTS AND AUTHORITIES**

In this Motion defendants Guam Industrial Services, Inc. ("GIS") and Mathews Pothen (its President and Chief Executive Officer) seek the same relief for the same reasons. GIS does business under the name "Guam Shipyard." For convenience, this Memorandum uses "GIS" to refer to the corporation and the term "Guam Shipyard" to refer collectively to both GIS and Pothen. This Memorandum refers to plaintiffs Zurich American Insurance Company ("Zurich") and Starr Indemnity & Liability Company ("Starr") jointly as "Insurers."

## I.    STATEMENT OF FACTS

### A.    The Floating Drydock MACHINIST.

The floating drydock MACHINIST was built in about 1979. It was towed to Guam in

EMARD DANOFF PORT
TAMULSKI & PAETZOLD LLP
49 Stevenson Street
Suite 400
San Francisco, CA 94105

1    2000 and has been there ever since.[1]

2          Guam Industrial Services, Inc., which is a Guam corporation that does business as Guam

3    Shipyard, and which performs maintenance and repair work on military vessels in Guam,

4    acquired the drydock in 2003. Guam Shipyard, which had to modernize the drydock to obtain

5    commercial certification, funded part of the modernization through Title XI financing guaranteed

6    by the Maritime Administration ("MARAD") of the U.S. Department of Transportation. The

7    MACHINIST is a documented vessel of the United States. Since 2003 Guam Shipyard has

8    operated the drydock in Apra Harbor, Guam, which is where Guam Shipyard's main facility is

9    located.[2]

10   **B.    Procurement of Insurance for the MACHINIST.**

11         As of January 3, 2011, Guam Shipyard had three kinds of insurance regarding the

12   MACHINIST: hull & machinery (essentially covering loss or damage to the drydock itself),

13   protection & indemnity (essentially covering tort liabilities to third parties), and ocean marine

14   (covering, among other risks, pollution). In September 2010 Guam Shipyard had renewed this

15   insurance through Aon Insurance Micronesia (Guam) Inc. ("Aon Guam"), which is the Guam

16   office of a multi-office insurance broker. Aon's presence in Guam through that office is a

17   substantial "bricks and mortar" presence with dozens of employees, in existence for many years.

18   To renew the insurances on the drydock, Guam Shipyard contacted Aon Guam, which contacted

19   Aon San Francisco, which apparently contacted the Insurers in San Francisco (who had issued

20   previous policies to Guam Shipyard), who subsequently issued the policies in issue.[3]

21         The insurance contract terms themselves are not in dispute. The Insurers (50% each)

22   issued a Hull & Machinery policy covering the MACHINIST, with a policy period of October 1,

23   2010, through October 1, 2011. The named insureds are: "Guam Industrial Services, Inc. dba

24   Guam Shipyard, Mathews Pothen and the United States of America P.O. Box 13010, Santa Rita,

25

26   [1] Pothen Decl., ¶1. Footnote references are to the Declarations dated June 29, 2011, filed in conjunction with this
27   Motion: Declaration of Mathews Pothen ("Pothen Decl."), Declaration of David Ledger ("Ledger Decl."), and
     Declaration of Eric Danoff ("Danoff Decl.").
     [2] Pothen Decl., ¶¶2, 3.
28   [3] Pothen Decl., ¶4.

EMARD DANOFF PORT
TAMULSKI & PAETZOLD LLP
49 Stevenson Street
Suite 400
San Francisco, CA 94105

- 2 -

NOTICE OF MOTION, POINTS AND AUTHORITIES
Case No  CV 11 1874 MEJ

1   Guam 96915." The loss payees are the named insureds and the Secretary of Transportation

2   acting through MARAD, as their interests may appear.[4]

3       At the same time Zurich (separately, not including Starr) issued to Guam Shipyard an

4   Ocean Marine Policy, having named insureds as Guam Industrial Services, Inc. and Mathews

5   Pothen and an additional insured as the United States, Department of the Navy.  The period for

6   that policy also is October 1, 2010, through October 1, 2011.[5]

7       The United States is a named assured under the policies only because it guaranteed bonds

8   that were issued to partially finance the modernization of the drydock.[6]

9       In obtaining the insurances, Guam Shipyard dealt only with Aon Guam; no one from

10  Guam Shipyard came to California.  After the policies were signed, Aon San Francisco sent them

11  to Aon Guam, which provided them to Guam Shipyard.[7]

12      **C.     The Sinking of the MACHINIST.**

13      The MACHINIST is moored at the Guam Shipyard facility, where it is used for

14  drydocking vessels.  In October 2010 Guam Shipyard took the MACHINIST out of service to do

15  repair work on it and to substantially upgrade it to be able to take on larger, heavier vessels.  The

16  upgrade and repair work began in November and December 2010.  During this work the drydock

17  was afloat at its location in the Guam Shipyard facility at Santa Rita, Guam, which is located in

18  the U.S. Navy base in Apra Harbor, Guam.[8]

19      The MACHINIST is a large drydock—over 771 feet long and 172 feet wide.  It has 40

20  tanks arranged four across and ten down the drydock's length.  As of December 30, 2010, while

21  the upgrade work was in process, the 94 manhole covers on the pontoon deck had been removed

22  and various areas of the pontoon deck had been cropped out.  The valves in tanks 1 through 12

23  had been removed for refurbishment.  A cofferdam had been placed over the hull penetrations in

24  way of tank no. 5 to keep water out and to allow work to proceed on the valves and pipes within

25

26  [4] The Hull & Machinery Policy is attached to Plaintiffs' Complaint.

27  [5] Pothen Decl., ¶5 and Ex. 1.
    [6] Pothen Decl., ¶6.

28  [7] Pothen Decl., ¶7.
    [8] Pothen Decl., ¶8.

EMARD DANOFF PORT
TAMULSKI & PAETZOLD LLP
49 Stevenson Street
Suite 400
San Francisco, CA 94105

NOTICE OF MOTION, POINTS AND AUTHORITIES
Case No  CV 11 1874 MEJ

1    the adjacent hull area.[9]

2         Guam Shipyard ceased work over the New Year's holiday, from December 31, 2010,

3    until the morning shift on January 3, 2011.  Shortly after midnight on January 3, however, Navy

4    Military Police ("MPs"), both ashore and on a boat, noticed that the drydock was taking on water

5    during high surf.  At the time heavy weather was passing by Guam and the Northern Mariana

6    Islands, causing high surf, hazardous conditions, and warnings to mariners.  One of the Navy

7    MPs notified the shipyard's night watchman, Peter Tenorio, who also saw that the drydock was

8    taking on water.  Tenorio called Pothen, who immediately went to the shipyard, arriving at about

9    1:00 a.m.  Pothen saw waves washing over the aft end of the pontoon deck and progressively

10   filling the open tanks from the aft end forward.  He immediately shut all electrical power to the

11   drydock to avoid sparking and fires.  Greg Calvo of Guam Shipyard arrived at about 2:00 a.m.

12   and also was an eyewitness to the sinking.  By approximately 4:00 a.m. that morning the drydock

13   had settled to the bottom, although it was not entirely under water.[10]

14        During that day Guam Shipyard personnel arranged to retrieve the floating debris,

15   including a fifty gallon oil storage tank and sandblast pots that had floated off the drydock, and

16   they removed the tools and equipments that were located on the pontoon deck that had oil in

17   them.  They also monitored the drydock to ensure that no oil leaked out due to the high surf,

18   although they had to wait until the afternoon to boom off the area surrounding it.  Thereafter they

19   took continuing measures to mitigate or prevent oil pollution.[11]

20        As the drydock was sinking Guam Shipyard informed the U.S. Coast Guard-Sector Guam

21   ("USCG").  USCG personnel came to the shipyard to assess the incident.  The USCG set up an

22   Incident Command Center at the shipyard to monitor the pollution abatement and the efforts to

23   raise the drydock.[12]

24        **D.     The Refloating of the MACHINIST.**

25        Efforts to raise the MACHINIST were begun once all the oil had been removed from the

26

27   [9] Pothen Decl., ¶9.
     [10] Pothen Decl., ¶10.
28   [11] Pothen Decl., ¶11.
     [12] Pothen Decl., ¶12.

EMARD DANOFF PORT
TAMULSKI & PAETZOLD LLP
49 Stevenson Street
Suite 400
San Francisco, CA 94105

- 4 -

drydock compartments.  Numerous meetings were held in Guam with the many interested parties--Guam Shipyard, the surveyor (Graessle) for the Insurers, the U.S. Coast Guard, the U.S. Navy, the EPA, the contractors (Resolve Marine, Heger Dry Dock) that were hired to plan and oversee the salvage operation, the divers (Mako Diving, Pro Marine) who did the underwater work to effect the dewatering and raising, and many others--to ensure that a proper refloating plan was designed and carried out and that appropriate navigational and pollution control measures were in place.  The drydock was refloated in early March 2011.

### E.    Guam Shipyard's Damages.

This casualty has, of course, caused significant damage to Guam Shipyard.  Guam Shipyard submitted to the Insurers that the MACHINIST sank due to extraordinary adverse sea conditions, including high swells and waves pounding against the drydock, which caused the cofferdam to break loose and water to enter into the open manholes at the aft end of the pontoon deck, which are covered perils under the policies.  Guam Shipyard has two kinds of claims under the policies: (a) for damage to the drydock and the cost of raising and repairing the drydock, which is a claim under the Hull & Machinery policy, in the amount of at least $6,884,043.02, and (b) for expenses incurred to mitigate and prevent pollution as a result of the casualty, which is a claim under the Ocean Marine policy, in the amount of at least $394,321.38.[13]

### F.    The Insurers' Declaratory Relief Action and Denial of Cover.

By letter dated April 19, 2011, which the Insurers sent from California by express mail to Guam Shipyard in Guam, the Insurers denied cover of this loss under the Hull & Machinery policy.  On that same date, without notice to or discussion with Guam Shipyard, they filed the Complaint For Declaratory Relief in this lawsuit.  It was anything but a fair "race to the courthouse"; the Insurers filed their declaratory relief action before Guam Shipyard even received the denial of cover letter.  In this lawsuit the Insurers seek declaratory relief that they are not liable under the Hull & Machinery policy.  The Complaint does not address Zurich's potential liability under the Ocean Marine policy.  According to the Complaint the Insurers seek

---

[13] Pothen Decl., ¶13.

EMARD DANOFF PORT
TAMULSKI & PAETZOLD LLP
49 Stevenson Street
Suite 400
San Francisco, CA 94105

NOTICE OF MOTION, POINTS AND AUTHORITIES
Case No. CV 11 1874 MEJ

declaratory relief on four grounds: (1) The Hull & Machinery policy contained a warranty that the MACHINIST would be U.S. Navy certified, but after October 31, 2011, it was not. (2) Guam Shipyard has not established that the sinking of the MACHINIST was caused by one of the covered perils under the policy. (3) Guam Shipyard breached the implied warranty of seaworthiness [of the drydock] at policy inception. (4) The Insurers reserve the right to assert additional grounds to deny cover should they find out any basis for doing so in future discovery.[14]

The Insurers' letter of April 19, 2011, denying cover under the Hull & Machinery policy amplifies the allegations in the Complaint. Their denial is primarily based on the report of Arthur Waddington, a surveyor they hired and sent to Guam to investigate the sinking. Waddington asserts (and the Insurers adopt) the following as causes of the sinking of the drydock: that the steelwork inside the drydock was corroded and compromised; that water was able to enter the cofferdam, and once it did, it went farther into the hull because the valve openings inside the drydock were not blanked off; that there was no automatic pump in the cofferdam and no one monitoring the incursion of water into the cofferdam over the holiday weekend; that one of the pipes leading from the hull openings in the cofferdam was cut away inside tank #8, which area was not blanked off, and thus because tank #8 was in communication with tanks #1-12, they all flooded; that bulkhead 88 between tanks 12 and 16 and tanks 9 and 13 was corroded and compromised, resulting in the free communication of water between those pairs of tanks; and that corrosion in the bulkheads and shell plating on many other areas of the drydock contributed to the casualty. He asserts that all this, in conjunction with the open manhole covers, caused the MACHINIST to sink, and he contests the nature and severity of the sea conditions that Guam Shipyard personnel, as well as the Coast Guard and other local Guam authorities, reported. In their denial of cover letter the Insurers also contend that the MACHINIST had longstanding conditions (which the Insurers did not specify) that made the MACHINIST unseaworthy at the inception of the policy.[15]

---

[14] Plaintiffs' Complaint.
[15] Pothen Decl., ¶14.

EMARD DANOFF PORT
TAMULSKI & PAETZOLD LLP
49 Stevenson Street
Suite 400
San Francisco, CA 94105

NOTICE OF MOTION, POINTS AND AUTHORITIES
Case No   CV 11 1874 MEJ

1    Guam Shipyard disagrees with Waddington's analysis and conclusions. Guam Shipyard

2    recites them here only to show what the coverage issues in dispute are, which the Court needs to

3    know to assess the factors bearing upon transfer of this case to Guam. This Motion is not, of

4    course, the appropriate place for Guam Shipyard to rebut Waddington's assertions, and Guam

5    Shipyard therefore refrains from doing so.

6    ### G.    Guam Shipyard's Lawsuit in Guam to Recover under the Policies.

7    On May 26, 2011, Guam Industrial Services, Inc. and Mathews Pothen filed a lawsuit

8    against the Insurers in the U.S. District Court for the District of Guam, Case No. 11-00014.

9    Guam Shipyard and Pothen asserted claims to recover damages under both the Ocean Marine

10   policy (which is not part of the declaratory relief action in this Court) and the Hull & Machinery

11   policy.[16]

12   Guam is a Territory of the United States, located in the western Pacific Ocean. It is the

13   largest of the Mariana Islands. As of the 2000 census its population was 154,805. Guam has a

14   federal U.S. District Court with a Chief District Court Judge and a Magistrate Judge. The Guam

15   Federal District Court follows the same Federal Rules of Civil Procedure as every other U.S.

16   District Court, and in admiralty cases it applies the same rules of admiralty procedure and U.S.

17   federal substantive maritime law as would other U.S. District Courts.[17]

18   ## II.    PLAINTIFFS' COMPLAINT AS AGAINST GUAM INDUSTRIAL SERVICES
         AND POTHEN SHOULD BE DISMISSED FOR LACK OF PERSONAL
19       JURISDICTION.

20   ### A.    Specific Personal Jurisdiction Requires Purposeful Availment of the Forum,
              and the Exercise of Jurisdiction Must Be Reasonable.
21

22   California's long-arm statute permits courts to exercise jurisdiction over parties "on any

23   basis not inconsistent with the Constitution of this state or the United States." California Code of

24   Civil Procedure §410.10. Thus the issue here is whether GIS and Pothen are subject to personal

25   jurisdiction under Constitutional principles.

26   For a court to have personal jurisdiction over a defendant, due process requires that the

27

28   [16] Ledger Decl., Ex. 1.
     [17] Ledger Decl., 2:6-2:10.

EMARD DANOFF PORT
TAMULSKI & PAETZOLD LLP
49 Stevenson Street
Suite 400
San Francisco, CA 94105

- 7 -

1  defendant have certain minimum contacts with the forum state such that the maintenance of the

2  suit does not offend traditional notions of fair play and substantial justice. *International Shoe*

3  *Co. v Washington* (1945) 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95; *Asahi Metal Indus. Co. v*

4  *Superior Court* (1987) 480 U.S. 102, 108-9, 107 S.Ct. 1026, 94 L.Ed.2d 92. Minimum contacts

5  must be predicated on a "substantial connection" between the defendant and the state, and only

6  the defendant's own actions purposely directed toward the state can establish that connection.

7  *Asahi Metal Indus. Co. v Superior Court, supra,* 480 U.S. at 112.

8          Minimum contacts may give rise to general jurisdiction or specific jurisdiction. General

9  personal jurisdiction, which enables a court to hear cases unrelated to the defendant's forum

10  activities, requires that the defendant's contacts with the state be substantial, continuous, and

11  systematic. *Helicopteros Nacionales de Colombia v Hall* (1984) 466 U.S. 408, 80 L.Ed.2d 404,

12  104 S.Ct. 1868. The absence of such business activities in California defeats an assertion of

13  general personal jurisdiction. *Fields v Sedgwick Associated Risks, Ltd.* (9th Cir. 1986) 796 F.2d

14  299, 301.

15          Specific personal jurisdiction requires the plaintiff's cause of action to arise from or relate

16  to the defendant's contacts with the state. Whether specific jurisdiction will lie turns on an

17  evaluation of the nature and quality of the defendant's contacts in relation to the cause of action.

18  *Thos. P. Gonzalez Corp. v Consejo Nacional, etc.* (9th Cir. 1980) 614 F.2d 1247, 1251. The

19  courts have developed a three-pronged test for this analysis: (1) the nonresident defendant must

20  perform some act by which he purposefully avails himself of the benefits and protections of the

21  forum's laws; (2) the plaintiff's claim must arise out of or result from the defendant's forum-

22  related activities; and (3) the exercise of jurisdiction must be reasonable. *Kulko v Sup. Ct.* (1978)

23  436 U.S. 84, 94, 98 S.Ct. 1690, 56 L.Ed.2d 132; *Data Disc, Inc. v Sys. Tech. Assocs., Inc.* (9th

24  Cir. 1977) 557 F.2d 1280; *McGlinchy v Shell Chemical Co.* (9th Cir. 1988) 845 F.2d 802, 816.

25          If the plaintiff establishes that the defendant had sufficient minimum contacts to support

26  specific jurisdiction, the court still must decide whether the exercise of jurisdiction would be

27  "reasonable," i.e., whether it would violate traditional notions of fair play and substantial justice.

28  *FDIC v British-American Ins. Co., Ltd.* (9th Cir. 1987) 828 F.2d 1439, 1442. In determining

EMARD DANOFF PORT
TAMULSKI & PAETZOLD LLP
49 Stevenson Street
Suite 400
San Francisco, CA 94105

- 8 -

NOTICE OF MOTION, POINTS AND AUTHORITIES
Case No  CV 11 1874 MEJ

reasonableness courts must consider all the relevant factors, including such factors as the extent
of the defendant's purposeful interjection, the burden on the defendant to defend in the forum,
the forum's interest in adjudicating the dispute, the most efficient judicial resolution of the
controversy, and the existence of an alternative forum. *FDIC v British-American Ins. Co., Ltd,
supra,* 828 F.2d at 1442.

**B.  GIS and Pothen Are Not Subject to Personal Jurisdiction in This Action.**

Guam Industrial Services, Inc. was incorporated in Guam in 1997. Pothen is a resident of
Guam. Guam Shipyard's business is and always has been performed exclusively in Guam.
Guam Shipyard (including Pothen) has never filed any papers with the California Secretary of
State or any local government agency in California to be authorized to do business here, has
never appointed an agent for service of process in California, has never had an office in
California, has never owned or leased real property in California, has never transacted business in
California, has never had any employees based in California, has never advertised in California,
has never directed sales or marketing activities to California, has never had any bank accounts or
other financial deposits in California, has never sued or defended a prior lawsuit in California,
has never had any directors, officers, or shareholders who live in California, and has never had
any subsidiary or affiliate companies that do business in California.[18]

That Guam Shipyard is not subject to general personal jurisdiction in California is self-
evident. Nor should Guam Shipyard be held subject to specific personal jurisdiction. The
casualty in issue has nothing to do with California. The only California contact is the fortuitous
issuance of the insurance policies in San Francisco. But to obtain the insurance Guam Shipyard
contacted Aon Guam, which could have shopped for that insurance in New York, London, or
Hong Kong. That Aon Guam chose to renew the insurance through the Insurers' San Francisco
office was random insofar as Guam Shipyard was concerned. Guam Shipyard did not purposely
avail itself of the benefits and protections of California's laws.

In any event, that a nonresident enters the forum state to execute or perform a contract

---

[18] Pothen Decl., ¶15.

EMARD DANOFF PORT
TAMULSKI & PAETZOLD LLP
49 Stevenson Street
Suite 400
San Francisco, CA 94105

NOTICE OF MOTION, POINTS AND AUTHORITIES
Case No   CV 11 1874 MEJ

with a resident does not per se establish minimum contacts.  *Gray & Co. v Firstenberg*

*Machinery Co.* (9th Cir. 1990) 913 F.2d 758, 760.  Nor is jurisdiction established merely because

the forum was the "place of contracting" or "place of performance."  Instead courts must evaluate

the factors governing whether the defendant purposefully established minimum contacts with the

forum, such as the negotiations, the contemplated future consequences, the terms of the contract,

and the parties' actual course of dealing.  *Gray & Co. v Firstenberg Machinery Co., supra,* 913

F.2d at 760.  For instance, where all other relevant contacts occurred outside California, a

Bahamian corporation was not subject to California jurisdiction solely because its employee was

in California briefly to conclude an agreement.  *FDIC v British-American Ins. Co., Ltd.* (9th Cir.

1987) 828 F2d 1439, 1444.

A case closely analogous to the one at bar is *Royal & Sunalliance Insurance Co. v*

*Resolve Towing & Salvage* (SDNY 2000) 2001 AMC 718.  In that case Royal (an insurer) sued

in New York for declaratory relief that it was under no duty to pay a claim for engine damage

that Resolve, a Caribbean based tug owner, had submitted.  Royal, which did business in New

York, had issued a hull and machinery policy covering potential damage to a Resolve tug.

Resolve obtained the insurance cover with Royal through a New York insurance broker.  Even if

the broker was considered to be Resolve's agent, the court said, New York lacked personal

jurisdiction over Resolve, because the mere placement of insurance through a New York broker

does not satisfy the minimum contacts test or the requirement that the exercise of jurisdiction be

reasonable under the circumstances.  In language that would be equally applicable to the case at

bar the court stated: "Resolve did not purposefully avail itself of the opportunity to do business in

New York or seek out benefits that would flow from this forum.  Defendant simply sought out a

marine insurance broker to obtain a policy to cover its activities in international waters and, at

best, exercised some control over the broker's actions in New York through telephone calls from

Florida."  Therefore the court granted Resolve's motion to dismiss.

Similarly, in *Ambassador Insurance Company v Truly Nolan of America, Inc.* (SDNY

1981) 514 F.Supp. 985, an Arizona corporation and a Florida corporation hired a Georgia broker

to obtain liability insurance for them.  The Georgia broker retained a New York insurance broker

EMARD DANOFF PORT
TAMULSKI & PAETZOLD LLP
49 Stevenson Street
Suite 400
San Francisco, CA 94105

to obtain coverage.  The New York broker obtained the requested insurance from a New York insurance company.  The insurer filed an action in New York against the insured Arizona and Florida corporations and the New York broker for additional premiums allegedly due, and the New York broker cross-claimed against the insured corporations and the Georgia broker for reimbursement.  The court dismissed the insured Arizona and Florida corporations and the Georgia broker for lack of personal jurisdiction, finding that the act of soliciting insurance through a New York broker was insufficient to satisfy the requirements of due process.

Assuming, arguendo, that the minimum contacts and purposeful availment requirements were met in this case, the Court still must find that exercising personal jurisdiction here would be reasonable.  Guam Shipyard submits that, given the paucity of California contacts of GIS and Pothen, the exercise of jurisdiction over them in this case would not be reasonable.

Guam Shipyard expects Insurers to argue that Aon was Guam Shipyard's agent, and Aon had significant contacts with San Francisco.  As the cases cited above demonstrate, that argument does not hold water legally; the insurance broker's contacts with the forum are not enough to justify personal jurisdiction over the insured.  In addition, insurance brokers sometimes wear two hats, acting as agent for both the insured and the insurer.  In this case Aon Guam did wear two hats, acting in certain respects as the agent of the Insurers.  The "Service of Suit" clause in the Hull & Machinery policy (p.16) states:  "This Assurer agrees that AON Insurance Micronesia (Guam) Inc. is authorized to receive suits on behalf of the Assurer..."[19]  The same Service of Suit clause—stating that Aon Guam is authorized to accept service of suit on behalf of Zurich— is found in the Ocean Marine policy.[20]  So when Aon Guam communicated with Aon San Francisco, that arguably was on behalf of the Insurers as well as on behalf of Guam Shipyard.

## III.     THIS CASE SHOULD BE TRANSFERRED TO THE U.S. DISTRICT COURT FOR THE DISTRICT OF GUAM.

### A.     Transfer is Warranted When Private and Public Interest Factors Make the Transferee District More Convenient.

Guam Shipyard seeks transfer of this case to Guam under 28 U.S.C. §1404(a), which

---

[19] Ex. 1, p. 16, to Plaintiff's Complaint.
[20] Pothen Decl., Ex. 1, p. 19.

1  provides: "For the convenience of parties and witnesses, in the interest of justice, a district court

2  may transfer any civil action to any other district or division where it might have been brought."

3  The term "district court" includes the District Court of Guam. 28 U.S.C. §1404(d). These

4  sections apply to admiralty actions. *Continental Grain Co. v The F.B.L.-585* (1960) 364 U.S. 19,

5  26-27, 80 S.Ct. 1470, 4 L.Ed.2d 1540. Since the Insurers could have brought their action in

6  Guam, the issue is where convenience and justice suggest this matter should be adjudicated.

7  District courts have broad discretion in determining whether transfer is warranted, which

8  is determined on a case-by-case basis. Courts have cited numerous factors in determining

9  whether to transfer, and no list of factors is complete. "There appears to be no limit to the

10 number of factors a federal court may consider in connection with a motion to transfer venue

11 under section 1404(a). The analysis is flexible and must be made on the unique facts of each

12 case." *Sandvik, Inc. v The Continental Insurance Co.* (DNJ 1989) 724 F.Supp. 303, 307. Nor is

13 any single factor determinative. The party moving for a change of venue bears the burden of

14 establishing that transfer is appropriate.

15 The traditional statement of factors to consider (albeit set forth in a forum non conveniens

16 case) is in *Gulf Oil Corp. v Gilbert* (1947) 330 U.S. 501, 67 Sup.Ct. 839, 91 L.Ed. 1055:

17 (a) private interest factors, such as the relative ease of access to sources of proof, and the

18 availability of compulsory process for attendance of unwilling, and the cost of obtaining

19 attendance of willing, witnesses, and (b) public interest factors, such as the varying degree of

20 docket congestion in different courts, the relationship between the forum chosen by the plaintiff

21 and the underlying controversy, and whether the law of the forum state would apply.

22 **B.      The Factors in this Case Call for Transfer to Guam.**

23 **1.      The Convenience of Witnesses.**

24 The most important factor in deciding on transfer is the convenience of the witnesses, in

25 particular the availability of witnesses who cannot be compelled to attend in another forum. *In re*

26 *Genentech, Inc.* (Fed. Cir. 2009) 566 F.3d 1338, 1343; *Reed v Fina Oil & Chem. Co.* (E.D. Tex.

27 1998) 995 F.Supp. 705, 714.

28 Nearly all the significant witnesses in this case are located in Guam. In assessing this it is

EMARD DANOFF PORT
TAMULSKI & PAETZOLD LLP
49 Stevenson Street
Suite 400
San Francisco, CA 94105

1  important to note that the reasons why the Insurers deny cover, or conversely the reasons why the

2  claims should be paid, relate to the condition of the drydock when the insurance policies were

3  issued, the condition of the drydock at the time of the sinking, the observations made during the

4  sinking, the cause of the sinking, the actions taken immediately after the sinking, and the

5  damages incurred as a result of the sinking.  The issuance of the insurance policies and the

6  wording of the insurance policies are not in issue.  The witnesses to the circumstances of the

7  casualty are described below.  Most are in Guam, and those who have potentially relevant

8  information but are not in Guam (Heger, Resolve personnel) reside on the U.S. East Coast,

9  although they traveled to Guam to do their work in regard to the drydock.  No important fact

10  witness is located in Northern California.

### a.  Witnesses with Knowledge of Important Information.

### i.  Guam Shipyard Personnel.

13  Guam Shipyard personnel provided maintenance and repair to the MACHINIST since

14  2003.  They maintained the drydock at the time the insurance was placed in September 2010,

15  performed the repair and upgrade work to the drydock during November-December 2010,

16  witnessed the sinking of the drydock and the sea conditions then present, assisted in raising the

17  drydock after it sank, evaluated the nature of extent of the damages incurred as a result of the

18  sinking, and will perform the repair work from the sinking.  Guam Shipyard personnel are key

19  witnesses to all the issues in dispute: the condition (seaworthiness) of the drydock, the

20  certificates the drydock obtained, the state of the drydock just before the sinking, the cause of the

21  sinking, and the damages sustained.  With one exception, all the Guam Shipyard personnel are

22  still Guam residents.[21]  These witnesses are as follows.

23  Mathews Pothen, President and CEO.  He is in charge of overall management of the

24  shipyard, and he was an eyewitness to the sinking.

25  Keith Carter, General Manager.  He is in charge of shipyard production personnel and

26  oversees drydock repairs and upgrade.

27

28

---

[21] Pothen Decl., ¶16.

EMARD DANOFF PORT
TAMULSKI & PAETZOLD LLP
49 Stevenson Street
Suite 400
San Francisco, CA 94105

NOTICE OF MOTION, POINTS AND AUTHORITIES
Case No   CV 11 1874 MEJ

1  Greg Calvo, Production Manager. He is in charge of shipyard production personnel, in

2  coordination with Carter. Calvo witnessed the sinking.

3  Anthony Baleto, Drydock Superintendent and Welding Foreman. He is in charge of all

4  the shipyard welding personnel. He was involved in the repair prior to the sinking and in raising

5  the drydock following the sinking.

6  Anthony Perez, Dock Pumping Master and Marine Machinery Leader. He was in charge

7  of the operation of all pumps and valves during the repair and upgrade work on the drydock at

8  the shipyard. He worked with Heger Dry Dock in developing the salvage plan.

9  Verny Yambao, Naval Architect and Planner Estimator. He performed naval architecture

10  services for the shipyard, including for the repair and upgrade work on the drydock, and he

11  participated in developing the salvage plan.

12  Bobby Altizer, Quality Assurance Manager. He is responsible for quality assurance at the

13  shipyard and for providing documentation to U.S. government agencies such as the U.S. Coast

14  Guard.

15  Sonne Alston, Safety and Environmental Manager. He is responsible for safety and

16  environmental matters at the shipyard.[22]

17  The only Guam Shipyard employee witness who no longer lives in Guam is Bruce

18  Spencer, who formerly was in charge of operations and had a role in providing the technical

19  information for procuring the insurance. He now lives in Florida.[23]

20  The foregoing list of Guam Shipyard witnesses is by no means exclusive. At this initial

21  stage of the litigation it is hard to say exactly what marine engineering, naval architecture,

22  drydock operation, piping, metallurgy, or other issues may become important, particularly since

23  the Insurers reserve the right to deny cover on any grounds they can find as discovery proceeds.

24  Numerous other Guam Shipyard personnel are witnesses to the condition of the drydock before,

25  during, and after the sinking, and they may become key witnesses depending upon how the case

26  develops. Guam Shipyard has several departments that worked on the MACHINIST before and

27

28

[22] Pothen Decl., ¶16.
[23] Pothen Decl., ¶17.

EMARD DANOFF PORT
TAMULSKI & PAETZOLD LLP
49 Stevenson Street
Suite 400
San Francisco, CA 94105

- 14 -

NOTICE OF MOTION, POINTS AND AUTHORITIES
Case No  CV 11 1874 MEJ

1  during the upgrade work in November and December 2010, and all of these departments have

2  Foremen and Leaders who live on Guam. These departments include Marine Machinery,

3  Electrical, Pipefitting, Carpentry, and Rigging.[24]

### ii.    G4S Personnel.

5  G4S, a private security company unrelated to Guam Shipyard, provides perimeter security

6  for the shipyard. Peter Tenorio of G4S was the security officer on duty at the time of the sinking

7  and was a witness to it. His testimony about what he saw and when will be important. He is a

8  resident of Guam.[25]

### iii.    Mako Diving & Salvage Services Personnel.

10  Mako Diving & Salvage Services, a private company unrelated to Guam Shipyard, did

11  most of the diving operations for the shipyard before the sinking. Mako has installed cofferdams

12  for the drydock since it was put into operation, including the cofferdam that Insurers now

13  contend was improperly placed and contributed as a cause of the sinking. In addition Mako

14  performed several underwater surveys of the drydock before the sinking and thus would have

15  information about its condition when the insurance was placed. On January 7, 2011, shortly after

16  the sinking, Mako conducted an underwater survey of the drydock. Mako performed a number of

17  diving operations to assist in raising the drydock. All the personnel of Mako who worked at the

18  shipyard facility are residents of Guam. They include Greg Gomez (Vice President and Dive

19  Operations Director) and divers Bruce Aguon, Curt Svitak, Rogerto Ramos, Jorel Carrera,

20  Mathew Marmar, Jonoe Moore, Brian Datuin, and David Aguon.[26]

### iv.    Pro Marine Technology.

22  Pro Marine Technology, a private company unrelated to Guam Shipyard, is a diving

23  company that provided diving services the day of the sinking, and additional diving services

24  later. Their personnel would be able to testify about the condition of the drydock at the time of

25  the sinking based on what they saw when diving that day. All the Pro Marine personnel are

---

[24] Pothen Decl., ¶18.
[25] Pothen Decl., ¶19.
[26] Pothen Decl., ¶20.

LMARD DANOFF PORT
TAMULSKI & PAETZOLD LLP
49 Stevenson Street
Suite 400
San Francisco, CA 94105

residents of Guam. The ones who participated in work on the drydock include Ken Collard
(President), Carey Rose (Operations Manager), and divers Kitty Santana, Frank Tosie, and John
Kaiser.[27]

### v.      Marianas Tug & Salvage Personnel.

Marianas Tug & Salvage LLC is a company affiliated with Guam Industrial Services.
Marianas Tug operates two tugs in the harbor near the drydock. The tugs participated in
collecting floating debris and equipment immediately after the sinking and assisted in pollution
mitigation and prevention following the casualty. All the personnel who work on the tugs are
Guam residents. The most important such witnesses are Kaiea Angererei and Martin Oben.[28]

### vi.      Heger Dry Dock Personnel.

Heger Dry Dock Inc. is an engineering service firm that provided commercial
certifications for the drydock and design work and engineering calculations for the upgrade of the
drydock. After the casualty Heger had a role in developing the salvage plan for raising the
drydock. Heger's only office is in Massachusetts. The main Heger employee who worked on the
salvage was engineer Waleed Sayed, who came to Guam for an extended period for that purpose.
Mark Proctor (Senior Engineer) and Robert Heger (President) did some work on the salvage from
Heger's Massachusetts office.[29]

### vii.      Resolve Marine Group.

After the sinking Resolve Marine Group was hired to oversee the salvage operation.
Resolve's office is in Florida. Todd Schauer (the Salvage Master/Project Manager) and Cody
Kurtz (engineer) attended the drydock in Guam for this purpose. Guam Shipyard is uncertain of
the location of their residences, but they worked through the Florida office of Resolve.[30]

### viii.      United States Coast Guard and Navy Personnel.

U.S. Coast Guard personnel in Guam played an important role immediately after the
sinking and for some time thereafter. Coast Guard personnel in Guam generally are assigned

---

[27] Pothen Decl., ¶21.
[28] Pothen Decl., ¶22.
[29] Pothen Decl., ¶23.
[30] Pothen Decl., ¶24.

EMARD DANOFF PORT
TAMULSKI & PAETZOLD LLP
49 Stevenson Street
Suite 400
San Francisco, CA 94105

NOTICE OF MOTION, POINTS AND AUTHORITIES
Case No  CV 11 1874 MEJ

1  there for a two to three year rotation.  The important potential Coast Guard witnesses are in

2  Guam now, including: Capt. Thomas Sparks, Captain of the Port, who set up an Incident

3  Command for risk mitigation of both pollution and navigation due to the sinking (which affects

4  Guam Shipyard's potential recovery under the Ocean Marine policy and the damages incurred

5  under both policies); Cdr. Yuri Graves, who was the Deputy Unified Commander; Lt. Cdr.

6  Felton Gilmore (Operations Chief); and Lt. Marlon Heron (Planning Chief).[31]

7        U.S. Navy military police personnel at Guam, both ashore and on a Navy security boat in

8  the harbor, witnessed the sinking of the drydock and were the first to notice that the drydock was

9  taking on water.  Guam Shipyard does not know their names yet.[32]

10                **b.**        **Witnesses with Knowledge of Undisputed or Unimportant Information.**

11                      **i.**        **Aon Insurance Personnel.**

12

13        Guam Shipyard obtained the insurance through Aon Guam.  As described above, Guam

14  Shipyard had virtually no direct contact with Aon San Francisco or with the Insurers themselves.

15  Because the existence and wording of the policies is not in dispute, the testimony of witnesses on

16  the procurement or issuance of the policies is of little or no relevance.  To the extent such

17  witnesses are needed, several of them are Aon Guam personnel who are residents of Guam,

18  including Rod Rankin (Regional Director), David Silva (Division Manager and the Guam

19  Shipyard account representative), and Percival Acejo (the Account Broker).  Guam Shipyard

20  understands that Aon Guam contacted Thomas Pfister (Vice President) of Aon San Francisco to

21  procure the insurance, but Guam Shipyard had minimal contact with Mr. Pfister before the

22  sinking.  Mr. Pfister had visited Guam Shipyard in the past to discuss the marine insurance

23  policies procured through Aon.[33]

24                     **ii.**        **The Insurers' Personnel.**

25        The persons who signed the policies for Zurich and for Starr apparently are based in San

26

27  _____

   [31] Pothen Decl., ¶25.

28     [32] Pothen Decl., ¶26.

   [33] Pothen Decl., ¶27.

EMARD DANOFF PORT
TAMULSKI & PAETZOLD LLP
49 Stevenson Street
Suite 400
San Francisco, CA  94105

NOTICE OF MOTION, POINTS AND AUTHORITIES
Case No  CV 11 1874 MEJ

Francisco. They have nothing important to contribute, however, because the policies say what they say, and no party is asserting that the policies are inaccurate or need to be reformed.

Guam Shipyard, which has not had the opportunity to do any discovery, has reason to believe that offices of Zurich and Starr other than in San Francisco had input, and even ultimate authority, to bind the insurances in issue, and that their San Francisco offices performed basically an administrative or ministerial function. If the Court is inclined not to transfer this case on the assumption that the Insurers' San Francisco offices were the only ones involved in placing this insurance, then Guam Shipyard requests time to do discovery on that issue.

### iii. The United States (MARAD) Personnel.

The United States is a named assured on the policies because it is a guarantor of bonds issued to partially finance the modernization of the drydock. The U.S. issued the guarantees through the Maritime Administration of the Department of Transportation in Washington, D.C. Guam Shipyard is current on the bond payments, so the United States has not suffered any recoverable damages to date. MARAD played no role in managing the drydock.[34] Thus no witnesses from MARAD are likely to be necessary in resolving the issues in dispute.

### c. The Surveyors for the Insurers.

Courts give little or no weight to the convenience of expert witnesses, because they are selected by the parties and are paid, so usually they can and are willing to appear to testify in any forum. *One Beacon Insurance Company v JNB Storage Trailer Rental* (E.D. Va. 2004) 312 F.Supp.2d 824, 831. Otherwise an insurer could create venue simply by hiring surveyors resident in the forum where it wants to sue for declaratory relief.

The Insurers initially sent surveyor Ward Graessle of Offshore Marine Surveyors of Kaneohe, Hawaii to Guam to investigate the casualty. Beginning on January 8, 2011, he inspected the drydock there, and he subsequently issued a report dated April 4, 2011.[35]

The Insurers, for reasons unknown to Guam Shipyard, apparently were not satisfied with Graessle and therefore sent surveyor Arthur Waddington of London Offshore Consultants in

---

[34] Pothen Decl., ¶28.
[35] Pothen Decl., ¶29.

1  Walnut Creek, CA to Guam.  He attended in Guam from February 20 to March 11, 2011, and

2  then again from March 30 to April 9, 2011.  He issued a report dated April 15, 2011.[36]  The

3  Insurers have demanded that Guam Shipyard make the drydock available for him to inspect a

4  third time.  Waddington is from Northern California, but that should have no bearing on this

5  Motion.  He is a retained expert, and as such his residence is essentially irrelevant.  He has

6  attended the drydock in Guam for two extended periods, and plans a third.  It would be

7  disingenuous for the Insurers to assert that it would be inconvenient for him to go there to testify.

8              **2.      The Convenience of the Parties.**

9          Another factor in determining whether to transfer a case is the convenience of the parties.

10  In this case Guam Shipyard would be greatly inconvenienced by defending an action in San

11  Francisco, but the Insurers are fully able—financially and in every other respect—to litigate in

12  Guam.

13          The plaintiff's choice of forum is generally given weight, but the amount of that weight

14  varies depending upon the circumstances.  Where the plaintiff chooses a forum that is neither his

15  home nor the situs where any of the operative facts of the underlying action is based, his forum

16  selection is entitled to little weight.  *In re Apple, Inc.* (8th Cir. 2010) 602 F.3d 909, 913; *Chrysler*

17  *Capital Corp. v Woehling* (D.Del. 1987) 663 F.Supp. 478, 482.  This is particularly true when it

18  is apparent that a plaintiff is "forum shopping" and trying to avoid the obvious or most

19  convenient forum.  *Reiffin v Microsoft Corp.* (D.D.C. 2000) 104 F.Supp.2d 48, 54 n.12.  The

20  plaintiff's choice of forum also is given little weight if the plaintiff, seeking a declaratory

21  judgment, "outraced" the defendant to the courthouse.  *Sweetheart Plastics, Inc. v Illinois Tool*

22  *Works, Inc.* (SDNY 1967) 267 F.Supp. 938, 941-2.

23          Zurich is a New York corporation with a home office in New York, NY and with a main

24  administrative office in Schaumburg, Illinois.  For the year 2010 Zurich reported assets of over

25  $29 billion and premium income of about $4.3 billion.[37]  According to its website, Zurich does

26

27

28

[36] Pothen Decl., ¶30.
[37] Danoff Decl., ¶1, Ex. 1.

EMARD DANOFF PORT
TAMULSKI & PAETZOLD LLP
49 Stevenson Street
Suite 400
San Francisco, CA  94105

- 19 -

NOTICE OF MOTION, POINTS AND AUTHORITIES
Case No   CV 11 1874 MEJ

1   business in its own name and through subsidiary companies all over the U.S. and Canada.[38]

2          Zurich has a substantial presence in Guam.  Since at least October 2003 the Government

3   of Guam has formally authorized Zurich to transact insurance business there, and Zurich has

4   appointed general agents and an agent for service of process there.  Zurich files annual reports

5   with the Guam Government.[39]

6          Zurich contemplated litigating in Guam under both the Hull & Machinery policy and the

7   Ocean Marine policy given that—as described above—the insurance policies had "Service of

8   Suit" clauses authorizing Aon Guam to accept service of lawsuits filed there concerning the

9   policies.

10         Starr is a Texas corporation with a home office in Dallas and a main administrative office

11  in New York, NY.  For the year 2010 Starr reported assets of over $913 million and premium

12  income of over $176 million.[40]

13         The relative financial means of the parties may be an important consideration in deciding

14  on transfer because it bears upon the inconvenience or harm in having the case proceed in one

15  forum versus another.  *Dwyer v General Motors Corp.* (SDNY 1994) 853 F.Supp. 690, 693.

16  Zurich and Starr have huge resources, whereas Guam Shipyard (with total gross revenue in 2010

17  of about $30 million) has a small fraction of those resources.  This casualty and the refusal of the

18  Insurers to pay under the policies has put the shipyard under financial pressure.[41]  For Guam

19  Shipyard to have to fly all the Guam-based witnesses to California would create a significant

20  financial burden.  Furthermore, many of the Guam-based witnesses are not shipyard employees;

21  those witnesses are beyond the subpoena power of this Court and may not be compelled to testify

22  in California.  In addition, Mr. Pothen is a hands-on manager, and for him to be away from Guam

23  for the trial would be a significant burden on Guam Shipyard.[42]  The Insurers' ability to litigate in

24  Guam far exceeds Guam Shipyard's ability to litigate in San Francisco.

25

---

[38] Danoff Decl., ¶2, Ex. 2.
[39] Ledger Decl., 2:12-2:16 and Ex. 2.
[40] Danoff Decl., ¶3, Ex. 3.
[41] Pothen Decl., ¶31.
[42] Pothen Decl., ¶32.

EMARD DANOFF PORT
TAMULSKI & PAETZOLD LLP
49 Stevenson Street
Suite 400
San Francisco, CA  94105

- 20 -

NOTICE OF MOTION, POINTS AND AUTHORITIES
Case No   CV 11 1874 MEJ

Indeed, Zurich and Starr already have retained Guam counsel and have appeared in the lawsuit by Guam Shipyard that is pending there against them. The Insurers' San Francisco counsel have been admitted to appear pro hac vice in that case in Guam.[43]

### 3. Judicial Economy.

Another factor in deciding upon transfer is whether it would avoid duplicative litigation, effect judicial economy, and prevent waste of time and money. *Posven, C.A. v Liberty Mut. Ins. Co.* (SDNY 2004) 303 F.Supp.2d 391, 405-6.

The cases now pending in San Francisco and Guam are not congruent. The Insurers' case here concerns coverage under the Hull & Machinery policy. Guam Shipyard's case in Guam concerns coverage under both the Hull & Machinery policy and the Ocean Marine policy. Thus if the case here is not transferred, the case in Guam still should go forward at least as to the Ocean Marine policy issues. If the two cases go forward in different settings, there will be duplicative litigation, because although the insurance policy claims differ, they both arise from the same set of operative facts.

The ability to implead a third party in the proposed transferee forum and thereby resolve related claims in a single action weighs heavily in favor of transfer. *Posven, C.A. v Liberty Mut. Ins. Co, supra.* This case is too young for Guam Shipyard to know whether it will have valid third party claims, but if it does, those claims would be against Guam entities. It will be impossible to implead those entities into an action in San Francisco.

### 4. The Relative Ease of Access to Sources of Proof.

All the records of Guam Shipyard, as well as those of the divers and other witnesses who worked on the drydock there, are in Guam.[44] These records—which pertain to the maintenance and repair history of the drydock, the subsequent salvage of the drydock, and the financial records of GIS—are substantial. Conversely, Guam Shipyard knows of no records that the Insurers have in San Francisco that could not easily be sent to Guam.

The necessity or desirability of the judge or jury being able to view the premises or other

---

[43] Ledger Decl., 1:25-2:5.
[44] Pothen Decl., ¶33.

EMARD DANOFF PORT
TAMULSKI & PAETZOLD LLP
49 Stevenson Street
Suite 400
San Francisco, CA 94105

1   property in issue supports transfer to the forum in which such a view is more convenient.

2   *Koehring Co. v Hyde Constr. Co.* (5th Cir. 1963) 324 F.2d 295, 296.  Given the technical

3   complexity in determining the cause and progression of the sinking of the drydock, this may be

4   the unusual case in which a view of it would be helpful to the judge, to assist in obtaining an

5   understanding of the architecture, structure, piping, and condition of the drydock.

6                   **5.      Factors Having Little or No Weight in this Case.**

7           The location or convenience of the parties' attorneys is entitled to little or no weight.  *In*

8   *re Horseshoe Entertainment* (5th Cir. 2003) 337 F.3d 429, 434.  In any event Zurich and Starr

9   have retained counsel in Guam, who have appeared in the lawsuit there.

10          The law that will apply is also given little or no weight.  In any event this case is in

11  admiralty, and both this Court and the court in Guam apply the same federal maritime law.

12          Relative docket congestion can be a factor, but cases in Guam reach trial in roughly the

13  same time frame as those in the Northern District of California.[45]

14          **C.      Analogous Cases Confirm the Propriety of Transfer.**

15          Because a determination to transfer is so case specific, comparisons with analogous cases

16  are of marginal utility.  Nevertheless analogous cases that order transfer in circumstances similar

17  to those in the case at bar may be instructive.

18          In *Reliance Insurance Co. v Bend'n Stretch, Inc.* (SDNY 1996) 935 F.Supp. 476,

19  Reliance issued an ocean marine insurance policy to BSI.  Goods owned by BSI were lost in its

20  Florida warehouse.  Reliance sued for declaratory relief in New York, asserting that the losses

21  were not covered by the policy.  BSI subsequently sued in Florida to recover under the policy.

22  BSI moved to have the New York case transferred to Florida.  Reliance opposed, contending that

23  the only issue was that of coverage, and that the insurance contract was negotiated and executed

24  in New York.  The New York court noted that an insurer should not be allowed to preempt an

25  insured's forum choice through the device of declaratory relief: "The Declaratory Judgment Act

26  is not to be used as a means of gaining a procedural advantage and preempting the forum choice

27

28
---

[45] Ledger Decl., 2:10-2:11.

EMARD DANOFF PORT
TAMULSKI & PAETZOLD LLP
49 Stevenson Street
Suite 400
San Francisco, CA 94105

1   property in issue supports transfer to the forum in which such a view is more convenient.

2   *Koehring Co. v Hyde Constr. Co.* (5th Cir. 1963) 324 F.2d 295, 296.  Given the technical

3   complexity in determining the cause and progression of the sinking of the drydock, this may be

4   the unusual case in which a view of it would be helpful to the judge, to assist in obtaining an

5   understanding of the architecture, structure, piping, and condition of the drydock.

6                   **5.      Factors Having Little or No Weight in this Case.**

7           The location or convenience of the parties' attorneys is entitled to little or no weight.  *In*

8   *re Horseshoe Entertainment* (5th Cir. 2003) 337 F.3d 429, 434.  In any event Zurich and Starr

9   have retained counsel in Guam, who have appeared in the lawsuit there.

10          The law that will apply is also given little or no weight.  In any event this case is in

11  admiralty, and both this Court and the court in Guam apply the same federal maritime law.

12          Relative docket congestion can be a factor, but cases in Guam reach trial in roughly the

13  same time frame as those in the Northern District of California.[45]

14          **C.      Analogous Cases Confirm the Propriety of Transfer.**

15          Because a determination to transfer is so case specific, comparisons with analogous cases

16  are of marginal utility.  Nevertheless analogous cases that order transfer in circumstances similar

17  to those in the case at bar may be instructive.

18          In *Reliance Insurance Co. v Bend'n Stretch, Inc.* (SDNY 1996) 935 F.Supp. 476,

19  Reliance issued an ocean marine insurance policy to BSI.  Goods owned by BSI were lost in its

20  Florida warehouse.  Reliance sued for declaratory relief in New York, asserting that the losses

21  were not covered by the policy.  BSI subsequently sued in Florida to recover under the policy.

22  BSI moved to have the New York case transferred to Florida.  Reliance opposed, contending that

23  the only issue was that of coverage, and that the insurance contract was negotiated and executed

24  in New York.  The New York court noted that an insurer should not be allowed to preempt an

25  insured's forum choice through the device of declaratory relief: "The Declaratory Judgment Act

26  is not to be used as a means of gaining a procedural advantage and preempting the forum choice

27

28

---

[45] Ledger Decl., 2:10-2:11.

EMARD DANOFF PORT
TAMULSKI & PAETZOLD LLP
49 Stevenson Street
Suite 400
San Francisco, CA 94105

- 22 -

NOTICE OF MOTION; POINTS AND AUTHORITIES
Case No · CV 11 1874 MEJ

of the complainant in a coercive [i.e., policy recovery] action." 935 F.Supp. at 478. In response to Reliance's assertion that this was only a policy interpretation issue, the New York court stated: "The naked contractual inception of the policy is not the nub of the controversy presented. Coverage of the insurance provided herein is best and probably almost exclusively to be determined on the state of facts and events that occurred in Florida." 935 F.Supp. at 478. The court therefore transferred the case to the Southern District of Florida pursuant to §1404(a).

In *Security Insurance Company v ITA Textiles* (SDNY 2000) 2000 U.S. Dist. LEXIS 15403, Security (an insurer) sued for declaratory relief that ITA had no recoverable claim under a marine insurance policy issued through a New York insurance broker. ITA's principal place of business was Los Angeles, where it sold fabric. ITA contacted a New York insurance broker to obtain marine insurance covering loss or damage to goods in transit. The policy, issued by Security, was negotiated and prepared in New York. Subsequently three containers of ITA's fabric were stolen in California. Security denied cover, then sued in New York. ITA thereafter sued in California to recover under the policy. The New York court denied ITA's motion to dismiss for lack of personal jurisdiction but granted ITA's motion under §1404(a) to transfer the action to the Central District of California. The court noted the impropriety of an insurer filing a declaratory relief action before the insured had a reasonable time to file its recovery action, i.e., for an insurer to win the race to the courthouse to gain tactical advantage over the insured. The court dismissed Security's argument that the testimony of those who negotiated and executed the policy in New York was important, stating that unless the terms of the policy are ambiguous, the testimony of those who drafted and executed it are unnecessary. Conversely, the court stated, the testimony of the witnesses in California regarding the events giving rise to the claim would be essential.

See also *One Beacon Insurance Company v JNB Storage Trailer Rental* (E.D. Va. 2004) 312 F. Supp.2d 824 (insurer's declaratory relief action and third party claims transferred under §1404(a) from Virginia to Louisiana, even though the insurance was obtained in Virginia, because the witnesses to the underlying loss were in Louisiana).

///

EMARD DANOFF PORT
TAMULSKI & PAETZOLD LLP
49 Stevenson Street
Suite 400
San Francisco, CA 94105

NOTICE OF MOTION, POINTS AND AUTHORITIES
Case No.: CV 11 1874 MEJ

1    **IV.    CONCLUSION**

2        Guam Shipyard submits that this Court should dismiss this case as against GIS and

3    Pothen for lack of personal jurisdiction or, in the alternative, transfer the case to Guam.

4        Guam Shipyard considers the reasons for transfer to be compelling, but acknowledges

5    that the issue of personal jurisdiction may be a closer one.  The Court can transfer this case,

6    however, without deciding the personal jurisdiction question.  A court need not have personal

7    jurisdiction over the defendant before transferring the action to another more convenient district

8    court pursuant to §1404(a).  *Fort Knox Music Inc. v Baptiste* (2nd Cir. 2001) 257 F.3d 108, 111-2

9    ("The district court has this power to transfer venue even if it lacks personal jurisdiction over the

10   defendants.").  The U.S. cannot contest personal jurisdiction here, but the same factors that call

11   for transfer apply to it as to Guam Shipyard.  Thus the most obvious and efficient resolution of

12   this Motion would be to transfer this case to Guam without deciding the personal jurisdiction

13   issue.

14

15   Dated: June 29, 2011                    EMARD DANOFF PORT TAMULSKI & PAETZOLD LLP

16

17                                           By_____/s/ Eric Danoff_____
                                                    Eric Danoff
18                                          Attorneys for Defendants
                                            GUAM INDUSTRIAL SERVICES, INC.
19                                          and MATHEWS POTHEN

20

21

22

23

24

25

26

27

28

EMARD DANOFF PORT
TAMULSKI & PAETZOLD LLP
49 Stevenson Street
Suite 400
San Francisco, CA 94105

- 24 -

NOTICE OF MOTION, POINTS AND AUTHORITIES
Case No   CV 11 1874 MEJ