UNITED STATES DISTRICT COURT

Northern District of California

| | |
|---|---|
| ZURICH AMERICAN INSURANCE, *et al.*,<br><br>Plaintiffs,<br>v.<br>GUAM INDUSTRIAL SERVICES, *et al.*,<br><br>Defendants.<br>_____/ | No. C 11-01874 MEJ<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO TRANSFER; DENYING DEFENDANTS' MOTION TO DISMISS**<br><br>**Docket No. 10** |

## I. INTRODUCTION

Pending before the Court is Defendants Guam Industrial Services, Inc. ("GIS") dba Guam Shipyard and Matthews Pothen's (collectively, "Defendants") Motion to Dismiss or, alternatively, Motion to Transfer (Dkt. No. 10). Plaintiffs Zurich American Insurance Company and Starr Indemnity & Liability Company (collectively, "Plaintiffs") have filed an Opposition (Dkt. No. 22), to which Defendants filed a Reply (Dkt. No. 29). Defendant United States has filed a joinder in Defendants' Motion (Dkt. No. 26). On August 25, 2011, the Court held a hearing on this matter. After careful consideration of the parties' arguments, the Court **GRANTS** Defendants' Motion to Transfer and **DENIES WITHOUT PREJUDICE** Defendants' Motion to Dismiss.

## II. BACKGROUND

Defendant GIS owns the floating drydock Machinist, a documented vessel of the United States, which it operates at its main facility in Apra Harbor, Guam. Compl. ¶ 6, Dkt. No. 1; Declaration of Matthews Pothen ¶¶ 2, 3, Dkt. No. 11. In October 2010, GIS, acting through an insurance broker in Guam, procured a Hull & Machinery and Protection & Indemnity Insurance Policy underwritten by Plaintiffs, with the policy period of October 1, 2010 to October 1, 2011. Compl. ¶ 9 & Ex. A. The Policy was drafted by GIS's insurance broker in San Francisco. Compl. ¶ 9.

On January 3, 2011, the Machinist sustained damages when it sank. *Id*. ¶ 10. GIS, working

with several other entities, refloated the Machinist in early March 2011. Mot. at 5. GIS thereafter submitted a claim under the Policy seeking to recover an unspecified amount between in excess of $1 million and potentially equal to or in excess of the Policy limit of liability of $10 million for the cost of raising and repairing the Machinist. Compl. ¶ 11. Plaintiffs subsequently declined liability for GIS's claim, based on the following: (1) GIS breached the express warranty in the Policy that the drydock is U.S. Navy Certified and Certification maintained; (2) GIS has not established the sinking of the Machinist and the damage resulting from the sinking were proximately caused by one of the named perils insured against under the Policy; (3) GIS breached the warranty of seaworthiness, in that, the Machinist was unseathworthy at the inception of coverage on October 1, 2010. *Id*. ¶ 12(a)-(c). Additionally, Plaintiffs reserved their rights to assert additional grounds for declination of liability should facts supporting them be discovered in the future. *Id*. ¶ 12(d).

On April 19, 2011, Plaintiffs filed this lawsuit seeking declaratory relief. In their Complaint, Plaintiffs allege that GIS has taken the position that the damage to the Machinist is covered by the Policy and disputes Plaintiffs' declination of its claim. *Id*. ¶ 13. Plaintiffs therefore seek a declaration from this Court that the damage to the Machinist and the expenses incurred by GIS in connection with raising the Machinist are not covered by the Policy. *Id*. ¶ 14.

Defendants now move to dismiss this lawsuit on the ground that this Court lacks personal jurisdiction over them. Mot. at 7-11. Briefly stated, Defendants assert that because they lack the minimum contacts necessary to subject them to suit in California. *Id*. at 9-10. They argue that they never purposefully availed themselves of the benefits and protections of California's laws and that exercise of jurisdiction over them would be unreasonable. *Id*.

Alternatively, Defendants urge the Court to transfer this action to federal district court for the District of Guam pursuant to 28 U.S.C. § 1404(a). *Id*. at 11. They argue that because the lawsuit could have originally been filed there, and because public and private interests all support litigating this action in Guam, transfer is appropriate. *Id*. at 12-13, 19-23. Plaintiffs, however, maintain that the central issue in this case is whether Defendants breached the U.S. Navy Certification warranty in the Policy, and argue that the individuals with relevant knowledge about the Policy are located in San

Francisco – not Guam. Opp'n at 16-19. Plaintiffs therefore argue that there is no basis to transfer the action.

Because the Court finds the transfer issue dispositive, it turns to that issue.

## III. LEGAL STANDARD

Section 1404(a) provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."[1] The Ninth Circuit has recognized that, pursuant to § 1404(a), "the district court has discretion to adjudicate motions for transfer according to an individualized, case-by-case consideration of convenience and fairness." *Jones v.. GNC Franchising, Inc*., 211 F.3d 495, 498 (9th Cir. 2000) (citing *Stewart Org. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988)) (internal quotations omitted).

In assessing whether to grant a motion to transfer, the Court may consider such factors as: (1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with governing law, (3) the Plaintiffs' choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to Plaintiffs' cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of non-party witnesses, and (8) the ease of access to sources of proof. *Jones*, 211 F.3d at 498. The burden is on the movant to make the strong showing that a change of venue is warranted. *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2nd 834, 843 (9th Cir. 1986).

## IV. DISCUSSION

**A.  The Parties' Positions**

In support of their request to transfer, Defendants argue as follows. First, they contend that nearly all the significant witnesses in this case are located in Guam. Mot. at 12. According to Defendants, "the reasons why the [Plaintiffs] deny cover, or conversely the reasons why the claims should be paid, relate to the condition of the drydock when the insurance policies were issued, the

---

[1] Section 1404(d) provides: "As used in this section, the term 'district court' includes the District Court of Guam . . . and the term 'district' includes the territorial jurisdiction of each such court."

3

condition of the drydock at the time of the sinking, the observations made during the sinking, the cause of the sinking, the actions taken immediately after the sinking, and the damages incurred as a result of the sinking." Mot. at 13. Defendants then proffer a list of potential witnesses with knowledge of such facts – all of whom are located in Guam. *See* Mot. at 13-17.

Plaintiffs, however, argue that the central issue in this case concerns interpretation of the Policy, and the witnesses relevant to that issue are located in San Francisco and the Bay Area. Opp'n at 17. Plaintiffs further contend that, with respect to the witnesses Defendants have identified, the majority of those witnesses are either directly affiliated with Defendants or are non-party witnesses who merely have knowledge of undisputed facts. Thus, Plaintiffs argue that the location of witnesses favors litigating the case in the Northern District.

Next, Defendants argue that the convenience of the parties favors transfer. Mot. at 19-20. Although Defendants acknowledge that the Plaintiffs' choice of forum is entitled to significant weight, Defendants argue that, here, Plaintiffs selected a District that is neither their home forum or the situs where the operative facts giving rise to their claims occurred. Mot. at 19. Defendants argue that by filing suit in the Northern District, Plaintiffs have put Defendants at a disadvantage because, unlike Plaintiffs, which are national corporations with offices in various locations in the country, GIS is a small business operating exclusively in Guam. Mot. at 20. They thus assert that Plaintiffs' ability to litigate in Guam far exceeds Defendants' ability to litigate in San Francisco. *Id.* Plaintiffs, however, maintain that their decision was not a product of forum-shopping, but is the most logical and reasonable choice because this District is where most of the witnesses who will provide relevant testimony about the Policy are located and this is the District were GIS chose to negotiate, draft, and enter into the Policy. Opp'n at 16-17.

Third, Defendants argue that judicial economy supports transferring this action to Guam. Mot. at 21. Defendants indicate that in May 2011, they filed a lawsuit against Plaintiffs in the federal court in Guam, asserting claims to recover damages under both the Policy at issue in this case, and an Ocean Marine policy issued by Zurich, alone. Mot. at 7, 21. Defendants contend that, "[i]f the two cases go forward in different settings, there will be duplicative litigation, because although the

4

insurance policy claims differ, they both arise from the same set of operative facts." Mot. at 21. Plaintiffs counter that Defendants filed the lawsuit in Guam in a transparent attempt to create a cause of action there that is not part of this action, and they point out that there is currently a motion to dismiss pending in that lawsuit. Opp'n at 18.

Fourth, Defendants argue that the relative ease of access to sources of proof is greater in Guam. Mot. at 21. Particularly, Defendants contend that GIS's records concerning the maintenance and repair history of the Machinist, the subsequent salvage of the Machinist, and its financial records are all located in Guam. Mot. at 21. Likewise, the records of the divers and other witnesses who worked on the Machinist are also located in Guam. *Id*. Defendants further contend that because the cause and progression of the sinking of the Machinist will be at issue, the fact that the Machinist is located in Guam is significant in the event the presiding judge or jury wishes to view the drydock. *Id*. at 21-22.

Finally, Defendants argue that the remaining factors are neutral or are not controlling. In particular, Defendants argue that federal maritime law applies in either District, thus both courts are equally familiar with the governing law, and the average time for a case to proceed to trial is roughly the same in both Districts. Mot. at 22 (citing Ledger Decl. at 2, Dkt. No. 12).

**B.    Analysis**

The Court has carefully considered the parties' arguments and finds that, on balance, the foregoing factors militate in favor of transfer. As indicated above, the parties offer competing characterizations of the core issues of this lawsuit, with Plaintiffs arguing that it is strictly about interpretation of the Policy, and Defendants arguing that, while this is an insurance dispute, the underlying issues relate to the sinking and raising of the Machinist. As alleged in Plaintiffs' Complaint, two of the three bases on which Plaintiffs have denied coverage relate to the maintenance and condition of the Machinist and the cause of its sinking in January 2011. Thus, even accepting Plaintiffs' argument that the threshold inquiry is purely legal in nature relating to interpretation of the Policy, the broader issues concerning the condition and sinking of the Machinist are intensely fact-driven inquiries. For this reason, the location of witnesses with relevant knowledge about the

condition and sinking of the Machinist, as well the location of documentary evidence and the Machinist itself are especially significant in this lawsuit. As described in Defendants' Motion, the majority of these witnesses, Defendants' documentary evidence, and the Machinist are all located in Guam. Thus, if the factual issues in this case must be litigated, access to such evidence is greater in Guam than in this District.

In the same vein, while Plaintiffs argue that the facts giving rise to this lawsuit occurred in San Francisco – where Plaintiffs argue the Policy was negotiated and drafted – the events giving rise to Defendants' claims under the Policy, which is what actually triggered Plaintiffs to deny liability and spawned this lawsuit, occurred in Guam. This, too, supports a finding that this action is more appropriately litigated in Guam, where the events giving rise to the insurance dispute occurred.

Further, the fact that the parties are already litigating a case concerning the same underlying events, albeit involving another insurance policy in addition to the Policy at issue here, supports transfer. Specifically, transferring this action to the District Court in Guam will avoid duplicate litigation and discovery. Moreover, the applicable law is the same in either forum.

In sum, while Plaintiffs' decision to file this lawsuit in the Northern District is entitled to some deference by the Court, Defendants have persuasively demonstrated that transfer is justified. The facts giving rise to the dispute occurred in Guam, several of the key fact witnesses and the documentary and physical evidence is located in Guam, and the parties are already litigating a case involving the same underlying issues in Guam. The Court therefore finds, on balance, transfer is appropriate pursuant to § 1404(a) for the convenience of the parties and in the interests of justice.

## V. CONCLUSION

For the reasons set forth above, the Court **GRANTS** Defendants' Motion to Transfer this action to the District Court of Guam (Dkt. No. 10). The Court **DENIES** Defendants' Motion to Dismiss **WITHOUT PREJUDICE**.

**IT IS SO ORDERED.**

Dated: August 29, 2011

Maria-Elena James
Chief United States Magistrate Judge

6